# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM, )
)
vs. )  **CRIMINAL CASE NO. CM1076-12**
)
RICKY JAMES SANTOS, )  **DECISION AND ORDER**
)
Defendant. )
)

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant's motion to dismiss, filed December 31, 2012 and Defendant's motion to suppress, filed February 14, 2013. Oral arguments were heard on January 25 and March 18, 2013. Assistant Attorneys General Matthew S. Heibel, Esq. and Gabrielle L. Rossi, Esq. appeared on behalf of the Government and Assistant Public Defender Suresh Sampath, Esq. represented the Defendant. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with underage drinking, driving under the influence of alcohol, and jurisdiction over adults based upon the following allegations. On November 29, 2012 at 1:01 a.m., Guam Police Officer John A. Bagaforo parked his police motorcycle in the Fountain Plaza parking lot in Tumon when a young woman almost vomited on him from the passenger window of a parked car. (Testimony of John A. Bagaforo, Record Log at 2:40, Mar. 18, 2013.) The young woman smelled of alcohol and was not responsive as she continued to vomit. *Id.* Officer Bagaforo found more minor passengers in the vehicle and radioed for backup at 1:02 a.m. (Testimony of John A. Bagaforo, Record Log at 2:40; Testimony of J.J. Mendiola, Record Log at 2:55, Mar. 18, 2013.)

Between 1:03 a.m. and 1:05 a.m., Officer Bagaforo observed Defendant walk out of the Circle K store towards the parked car. (Testimony of John A. Bagaforo, Record Log at 2:40.) Defendant could see that Officer Bagaforo's motorcycle was parked behind his car. (Testimony

of Ricky J. Santos, Record Log at 3:22, Mar. 18, 2013.) Officer Bagaforo asked Defendant about the car and the intoxicated young woman and observed that Defendant had bloodshot, watery eyes and smelled of alcohol. (Testimony of John A. Bagaforo, Record Log at 2:40.) Defendant affirmed that he was the driver of the vehicle. *Id.* Officer Bagaforo and Defendant then helped the intoxicated young woman reach a bathroom because she could not walk on her own. *Id.*

At 1:10 a.m., Guam Police Officer J.J. Mendiola arrived and observed that Defendant had bloodshot, watery eyes and smelled of alcohol. (Testimony of J.J. Mendiola, Record Log at 2:55.) Defendant participated in Standardized Field Sobriety Tests and was arrested when he failed them at 1:23 a.m. *Id.* Defendant was thereafter transported to the police station where he executed a written waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), made statements, and performed a breath test. *Id.*

On December 31, 2012, Defendant moved to dismiss the underage drinking charge as *de minimis* pursuant to 9 GCA §7.67(b). For the purposes of this motion, the parties stipulate that Defendant is alleged to have consumed less than one cup of liquor. (Record log at 2:37 and 3:12, Jan. 25, 2013.)

On February 14, 2012, Defendant moved to suppress all evidence obtained from the investigative detention because it lasted longer than fifteen (15) minutes in violation of 8 GCA § 30.30. Defendant asserts his initial detention was an unreasonable seizure and that all evidence obtained during or as a result of the seizure must be suppressed. The Government opposes suppression on the bases that: 1) the Defendant consented to an extended detention when he participated in field sobriety tests; 2) probable cause to arrest appeared before 15 minutes of alleged detention; and 3) suppression should be limited to evidence obtained after 15 minutes of detention and before arrest.

## DISCUSSION

**1. De Minimis Conduct**

Pursuant to 8 GCA § 80.70(c), "[t]he court on its own motion may dismiss a prosecution pursuant to [9 GCA] § 7.67." 8 GCA § 80.70(c). Title 9 GCA § 7.67(b) provides that,

The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct...[d]id not actually cause of threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction.

9 GCA § 7.67(b).

In order to consider dismissal under 9 GCA § 7.67(b) and *de minimis* grounds, the Court should assume all factual allegations as true and determine whether the alleged conduct exposes society to a risk of harm sufficient to warrant conviction. *People v. Perez*, 2004 Guam 4 ¶¶ 16-21. The risk of harm to society is determined by examining: 1) the attendant circumstances; 2) the existence of contraband; 3) the value of property involved; 4) the use or threat of violence; and 5) the use of weapons. *Id.* at ¶ 12 (citing *State v. Zarrilli*, 523 A.2d 284, 288 (N.J. Super. Ct. Law Div. 1987)).

In this case, Defendant stipulates that he drank less than one cup of liquor before he allegedly drove a vehicle. The attendant circumstances of underage drinking and driving pose a serious threat of violence to society. *See Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990) ("No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion."). The Court does not find that Defendant's conduct before operating a motor vehicle is too trivial to warrant conviction. *Cf. Zarrilli*, 523 A.2d at 288-289 (underage sip of beer does not endanger others where no vehicles are involved). For this reason, the underage drinking charge shall not be dismissed as de minimis pursuant to 9 GCA § 7.67(b).

## 2. The Stop and Frisk Act

The Fourth Amendment permits brief investigative detentions that are based upon a reasonable suspicion of illegal conduct. *People v. Johnson*, 1997 Guam 9 ¶ 4 (*citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968)). This principle is codified in the entitled Stop and Frisk Act at 8 GCA Chapter 30. *See People v. Cundiff*, 2006 Guam 12 ¶ 40.

///

///

Title 8 GCA § 30.10 states:

> Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person.

Title 8 GCA § 30.20 states:

> Detention pursuant to § 30.10 shall be for the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which lead the officer to believe that he had committed, was committing, or was about to commit a criminal offense, but such person shall not be compelled to answer any inquiry of the peace officer.

Title 8 GCA § 30.30 states:

> No person shall be detained under the provisions of § 30.10 longer than is reasonably necessary to effect the purposes of that section, and in no event longer than fifteen (15) minutes. Such detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.

Title 8 GCA § 30.40 states:

> If at any time after the onset of the detention authorized by § 30.10, probable cause for arrest of the person shall appear, the person shall be arrested. If after an inquiry into the circumstances which prompted the detention, no probable cause for the arrest of the person shall appear, he shall be released.

Thus under Guam law, a police officer having a reasonable suspicion regarding criminal activity by a particular individual may detain that person to investigate said suspected criminal activity. 8 GCA §§ 30.10 & 30.20. When this investigative detention reveals probable cause for arrest, "the person shall be arrested." 8 GCA § 30.40. However, "in no event [shall a person be detained] longer than fifteen (15) minutes," and the person "shall be released," if no probable cause for arrest appears. 8 GCA §§ 30.30 and 30.40.

In this case, the parties dispute the application and effect of the 15 minute time limit for investigative detentions. The Government argues that any appearance of probable cause to arrest within 15 minutes removes the need to apply the time limitation. Alternatively, the Government contends that any suppression applies only to evidence obtained after 15 minutes and before arrest. Defendant asserts that if he is not arrested or released within 15 minutes

pursuant to the Stop and Frisk statutes, then all evidence from the investigative detention must be suppressed unless it comes from an independent source.

**3. Violation of the 15-Minute Time Limit**

    a. <u>Meaning of the Stop and Frisk Act</u>.

Title 8 GCA Chapter 30 and the 15-minute time limit are derived from former Penal Code Sections 735 through 736.4. *See* 8 GCA § 30.10, COMMENT; Guam Pub. L. 10-99 (June 19, 1969). Former Sections 735 through 736.4 were enacted as original statutes and without any statement of legislative findings or intent. P.L. 10-99. There is an absence of controlling authority to interpret the 15 minute time limit.[1] Without clear legislative intent or authority to the contrary, the Court shall interpret the Stop and Frisk statutes according to their plain meaning. *See Guam Resorts, Inc. v. G.C. Corporation*, 2012 Guam 13 ¶ 7 ("When the plain reading of a statute is 'clear on its face' and yields to an unambiguous definition, we will not look past that plain reading."); *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 29 ("A plain reading construction is appropriate where the statute lays out specific requirements and indicates exactly what is necessary for compliance without ambiguous terms."); *People v. Lau*, 2007 Guam 4 ¶¶ 11-14.

An examination of the plain language of the 15-minute time limit within the context of 8 GCA Chapter 30 does not reveal ambiguity or absurd and unworkable consequences. *See Sumitomo Const., Co., Ltd. v. Government of Guam*, 2001 Guam 23 ¶ 17; *People v. Flores*, 2004 Guam 18 ¶ 18. The Stop and Frisk Act states that a person shall be detained, "in no event longer than fifteen (15) minutes." 8 GCA § 30.30. If probable cause to arrest appears, "at any

---

[1] For example, Guam law does not explicitly discredit any detention beyond the time limit nor does it conversely hold that the time limit is merely a guide for law enforcement. *Compare Florida v. Royer*, 460, U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."), *and U.S. v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."), *with U.S. v. Place*, 462 U.S. 696, 709 n.10, 103 S.Ct. 2637, 2646 (1983) ("We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation.

time after the onset of the detention...the person shall be arrested." 8 GCA § 30.40. If probable cause does not appear, "he shall be released." *Id.* This language clearly contemplates that any investigative detention must end by arrest or release within 15 minutes. Even where probable cause to arrest appears within 15 minutes of detention, the plain language of 8 GCA § 30.30 does not allow the detention to continue beyond 15 minutes. When a person is detained without arrest for more than 15 minutes, although probable cause to arrest may appear, the Stop and Frisk statutes are violated.

To posit that probable cause arising before the expiration of 15 minutes somehow negates the statute's time limit is to say that an officer may detain an individual indefinitely without an arrest just because probable cause arose within the first 15 minutes. This would be an illogical reading of the statute that subverts its entire purpose, and one which this Court cannot reasonably adopt. The Guam Legislature has apparently narrowed the ability of any officer to graduate an investigative detention according to the demands of a particular situation, as the U.S. Supreme Court might otherwise afford in the absence of an explicit time limit. *See, e.g., U.S. v. Sharpe*, 470 U.S. 675, 685-87, 105 S.Ct. 1568 (1985). Based upon the plain meaning of the Stop and Frisk statutes, the Court holds that an investigative detention must cease by arrest or release within 15 minutes of its initiation.[2]

The Government argues that a defendant's voluntary consent to undergo a Standardized Field Sobriety Test vitiates the effect of 8 GCA § 30.30, tolling the 15-minute clock.[3] However, the plain language of the statute is inescapable. It states in pertinent part: "No person shall be detained … longer than is reasonably necessary to effect the purposes of [Section 30.10], <u>and in no event</u> longer than fifteen (15) minutes. 8 GCA § 30.30 (emphasis added). This

---

Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation.").

[2] The Court recognizes this law's possibly impairing effect upon meaningful law enforcement investigation technique; however, this Court is duty-bound to administer the law as the Legislature intended and may do no more. The only alternative is for the Legislature to re-examine whether the statute indeed withstands an effective application to real-world circumstances within the reasonable balance between individual liberty interests and the Government's law enforcement interests.

[3] *See generally, People v. Santos*, 1999 Guam 1 ¶¶ 33-37; *People v. Chargualaf*, 2001 Guam 1 ¶¶ 14-15

unconditional language unequivocally imparts that no circumstance may serve as an exception to the time limit, be it exigency or even an express waiver by the detainee.

b. Application to the Facts of this Case.

In order to apply this rule to the present case, the Court must further examine the difference between an investigative detention and an arrest. Under Guam law, "a person has been seized under the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Cundiff*, 2006 Guam 12 at ¶ 21 (*quoting United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980)). An investigative detention under 8 GCA Chapter 30 is consistent with a Fourth Amendment seizure. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Terry*, 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). For this reason, an investigative detention occurs when a reasonable person would believe he is not free to leave under the circumstances.

Guam law defines an arrest as, "an actual restraint of the person, or...submission to the custody of the person making the arrest." 8 GCA § 20.10. An officer must announce the arrest pursuant to 8 GCA § 20.25, but the declaration is not an absolute requirement for a lawful arrest based upon probable cause. *Cundiff*, 2006 Guam 12 at ¶¶ 35-36 and 25-26 (*quoting People v. Maddox*, 294 P.2d 6, 9 (Cal. 1956); and *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964)). Any physical restraint that curtails movement constitutes an arrest. *Id.* at ¶¶ 19-20 (*quoting Sibron v. New York*, 392 U.S. 40, 67, 88 S.Ct. 1889 (1968)).[4] Even without physical restraint, a severely intrusive detention may constitute an arrest. *Id.* at ¶¶ 21-22 (*quoting Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248 (1979) (custodial interrogation is an arrest and requires probable cause)).

In this case, Defendant encountered Officer Bagaforo next to his car between 1:03 a.m. and 1:05 a.m. Officer Bagaforo asked Defendant questions about his car and the minors inside,

---

[4] *Cf. People v. Farata*, 2007 Guam 8 ¶¶ 44-45; *People v. Santos*, 2003 Guam 1 ¶ 51 (police custody ultimately determined by use of physical restraint comparable to formal arrest).

and Defendant could see that the Officer's motorcycle was parked behind his car. Under these circumstances, Defendant was detained pursuant to 8 GCA Chapter 30 because he could not reasonably believe that he was free to disregard the police and walk or drive away. *See Mendenhall*, 446 U.S. at 554 (no detention if person can disregard and walk away). Defendant was arrested at 1:23 a.m. and transported to the police station. The investigative detention lasted between eighteen (18) and twenty (20) minutes before it ended with an arrest. For this reason, the investigative detention violated the 15-minute time limit of the Stop and Frisk Act.

**4. The Exclusionary Remedy**

The Stop and Frisk Act does not provide an explicit remedy for a person who is detained by law enforcement for more than 15 minutes. *See* 8 GCA Chapter 30. However, an unreasonable investigative detention implicates the Fourth Amendment under Guam law. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 40; *Chargualaf*, 2001 Guam 1 at ¶ 20 ("[T]he Fourth Amendment is only at issue where the police detain or seize an individual while posing investigative questions.") (*citing Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983)). When the Fourth Amendment is violated by an unlawful seizure or investigative detention, evidence obtained during the detention must be suppressed pursuant to the exclusionary rule. *See e.g. Cundiff*, 2006 Guam 12 at ¶ 51; *Terry*, 392 U.S. at 13-15. Evidence that is obtained during or derived from an unlawful detention must be suppressed pursuant to the fruit of the poisonous tree doctrine. *Cundiff*, 2006 Guam 12 at ¶ 41 (*citing Wong Sun v. United States*, 371 U.S. 471 (1963); *People v. Santos*, 2003 Guam 1 ¶ 64).[5]

The Stop and Frisk Act's 15 minute time limit constitutes a greater restriction upon police activity than the Fourth Amendment. *See* discussion *supra* and *Place*, 462 U.S. at 709 ("we decline to adopt any outside time limitation for a permissible *Terry* stop"). For this

---

[5] *See also Nix v. Williams*, 467 U.S. 431, 442-443, 104 S.Ct. 2501, 2508 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting

reason, the Constitution may not protect against a violation of 8 GCA § 30.30 although it implicates the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598 (2008) (evidence is not excluded under the Fourth Amendment for the violation of a state law that restricts police intrusion more narrowly than the Constitution). However, the Organic Act of Guam incorporates language identical to the Fourth Amendment and the Court is persuaded by aforementioned federal cases that apply the exclusionary rule in order to remedy unreasonable searches and seizures. *Compare* 48 U.S.C. § 1421b(c) *with* U.S. Const. amend. IV (identical language). *See also People v. Roten*, 2012 Guam 3 ¶ 16; *Macris v. Guam Memorial Hosp. Authority*, 2008 Guam 6 ¶ 25 (federal cases interpreting identical language are persuasive authority). Furthermore, the Guam Legislature clearly considered exclusion to be an appropriate remedy for a violation of the Stop and Frisk Act. *See* 8 GCA § 30.60 (evidence obtained from a frisk is not admissible when a detention lasts longer than 15 minutes). *Cf. Moore*, 553 U.S. at 167 (Virginia does not require suppression of evidence obtained in violation of state law).

On these grounds, the Court shall apply the ordinary exclusionary rule and fruit of the poisonous tree doctrine to the Stop and Frisk statutes and suppress all evidence obtained or derived from an unlawful detention that exceeds the time limit; specifically meaning any and all evidence obtained during the entire detention, and not just that evidence obtained after the 15-minute time limit has elapsed.

In order to suppress evidence under the fruit of the poisonous tree doctrine, the Court must determine "whether the challenged evidence was come at by exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Cundiff*, 2006 Guam 12 at ¶ 41; *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Segura v. United States*, 468 U.S. 796, 805-805, 104 S.Ct. 3380, 3385 (1984)). *See also Segura*, 468 U.S. at 815 ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of

persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.").

the discovery of the evidence."). The coercive effect of an illegal seizure may attenuate and dissipate with the passage of time. *Santos*, 2003 Guam 1 at ¶ 65 (*quoting Oregon v. Elstad*, 470 U.S. 298, 311-312, 105 S.Ct 1285, 1294 (1985)).

In this case, the unlawful Stop and Frisk Act detention ended when Defendant was arrested at 1:23 a.m. and transported to the police station. Defendant subsequently waived his Miranda rights, made statements to the police and performed a breath test. The short passage of time between the illegal detention and the evidence collected at the police station by itself does not likely dissipate and purge the taint of the illegality. *See Brown v. Illinois*, 422 U.S. 590, 604-605, 95 S.Ct. 2254, 2262 (1975) (statement separated from illegal arrest by less than two hours does not purge the taint of illegal arrest). Furthermore, an implied consent warning and *Miranda* warning alone do not purge the taint of the illegal detention. *Id.* at 601-603. In order to determine whether Defendant's statements and breath test are purged of the taint of the illegal detention, the Court should consider the totality of the circumstances, including: 1) the temporal proximity between the illegal detention and the evidence; 2) the presence of intervening circumstances; and 3) particularly, the purpose and flagrance of the illegal conduct. *Chargualaf*, 2001 Guam 1 at ¶ 53 (*citing Brown*, 422 U.S. at 603-604).

As discussed above, the close temporal proximity between the illegal detention and the evidence collected at the police station does not purge the taint of illegality. Furthermore, there are no intervening circumstances to purge the taint of the illegal detention. *See Johnson v. Louisiana*, 406 U.S. 356, 365, 92 S.Ct. 1620, 1626 (1972) (lineup identification is purged of illegal arrest when conducted with counsel and after magistrate hearing to advise rights and commit under bail). However, it is particularly important here that the illegal detention did not have an illegal purpose or constitute flagrant illegal conduct. During the period of unlawful detention, Officers Bagaforo and Mendiola observed indicators of Defendant's intoxication, questioned Defendant about driving and intoxication, conducted standardized field sobriety tests, and arrested Defendant when he purportedly failed the tests. These actions are reasonably tailored to quickly confirm or dispel the suspicion that Defendant consumed alcohol as a minor and drove under the influence of alcohol. *See Sharpe*, 470 U.S. at 686. On this basis, the 18-20

minute detention was not conducted for an illegal purpose, nor did it constitute flagrant illegal conduct and the evidence obtained under custody is purged of the taint of the illegal detention.[6]

For all of these reasons, the police obtained Defendant's custodial statements and breath test results by means sufficiently distinguishable to be purged of the primary taint of the illegal detention, and those particular statements and the test result shall not be excluded under the fruit of the poisonous tree doctrine. *See Cundiff*, 2006 Guam 12 at ¶ 41.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss is hereby DENIED. Furthermore, Defendant's motion to suppress is hereby GRANTED and all evidence obtained from the onset of the detention until his arrest and custodial waivers shall not be admissible against Defendant.

**SO ORDERED** this ___/8TH___ day of **April, 2013.**

**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

[certify that the foregoing ... true and correct copy ... at the ... Clerk of the Superior Court of Guam, ... at Hagåtña, Guam

APR 1  2013

James R. Borja
Deputy Clerk, Superior Court of Guam

---

[6] One example of an illegal purpose or flagrant illegal conduct under the Stop and Frisk statutes is a detention and investigation that exceeds the scope of the officer's reasonable suspicions, and which reveals evidence of wholly unrelated conduct after more than 15 minutes, only because the detention continued indefinitely. *See generally Dunaway*, 442 U.S. at 218-219 (confession inadmissible where defendant was seized without probable cause in the hope that something might turn up).